

One World Financial Center
27th Floor
New York, NY 10281
(212) 796-6330

**MORVILLO LLP**

1101 17th Street, NW
Suite 1006
Washington, DC 20036
(202) 470-0330

www.morvillolaw.com

WRITER'S CONTACT INFORMATION
GREGORY MORVILLO
(212) 796-6340
GMORVILLO@MORVILLOLAW.COM

June 13, 2013

**Via Electronic Mail**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 905
New York, New York 10007



Re: *United States v. Todd Newman and Anthony Chiasson*, S2 12 CR 121 (RJS)

Dear Judge Sullivan:

The undersigned represents Anthony Chiasson in the above captioned matter. On May 13, 2013, this Court conducted Mr. Chiasson's sentencing hearing. At that time, the Court deferred the question of forfeiture to permit the parties to resolve the issue as to the appropriate measure of forfeiture in this matter. On June 12, 2013, the government submitted a letter in support of its position that Mr. Chiasson's forfeiture amount should be $2 million.[1]

Mr. Chiasson submits this letter in response to the government's letter and in support of his position at sentencing: that in the absence of a detailed analysis conducted by the

---

[1] The government has accepted Mr. Chiasson's proposed Nvidia incentive fee number of $1,180,498. Thus, this letter addresses only forfeiture due to profits from management fees. As part of his sentencing submission, Mr. Chiasson proposed a management fee forfeiture number of $201,719 as reflected in his proposed forfeiture calculations in corrected Exhibit 3 to the May 4, 2013 letter, attached hereto as exhibit A. He maintains that this is the appropriate number.

The Honorable Richard J. Sullivan
June 13, 2013
Page 2

government (as the burden is on it to establish forfeiture and not on Mr. Chiasson to proactively refute it)[2] the forfeiture of management fees should be limited to the profits under management resulting from the charged trades ("profits under management") in the quarter after the questioned trades.

At the hearing, Mr. Chiasson argued that this Court should limit the amount of forfeiture to only the management fees Mr. Chiasson personally collected in the quarter following the trades at issue. The government argued that the Court should forfeit all management fee profits Messrs. Chiasson and Ganek received for at least a year following the trades in question. (Tr. at 29:25-30:6.) While the Court agreed that Mr. Chiasson was liable for both his and Mr. Ganek's management fee profits, neither party could inform the Court how much that amounted to. Mr. Chiasson's counsel noted that it would be necessary to do a forensic analysis of Level Global's funds to fully understand the amount of the profit remaining at the end of each quarter following the trades in question.

The Court suggested that one method of determining the profit under management that remained in the funds was to take the assets under management at the end of each quarter and subtract the investor redemptions from that quarter to reveal the amount of profits that remained in the funds. Mr. Chiasson, at the time and now, disagrees with the Court's suggested methodology.

The Court's suggested method fails to consider certain categories of redemptions and would lead to an overinflated number of profits under management at any time after the quarter immediately following the trade in question. Specifically, the Court's suggestion does not account for investors that only allocated monies to the technology funds within Level Global. A redemption from technology-only investment would necessarily redeem a larger percentage of the profits under management than would a redemption from a more diversified investment. Thus, without understanding the nature of the investment, any proposed forfeiture number, after the first post-trade quarter, would be pure guesswork.

In addition, Level Global had single investments made up of multiple, individual investors. The Court's proposal would not account for situations where such an investment redeemed a portion of assets and replaced it with others. As an example, in the situation where a fund (which itself had numerous clients) invested $20 million in Level Global and withdrew $5 million for one client, but added $5 million for another—to keep its $20 million investment slot—profits under management would be reduced, but assets under management would remain

---

[2] As Mr. Chiasson argued previously, Memorandum in Aid of Sentencing on Behalf of Anthony Chiasson at 67 n.38, under Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, the government should be required to prove any forfeiture amount to a jury beyond a reasonable doubt. But at a minimum, it is the government's burden to prove facts supporting forfeiture by a preponderance of the evidence. U.S. v. Gaskin, 364 F.3d 438, 461 (2d Cir. 2004).

The Honorable Richard J. Sullivan
June 13, 2013
Page 3

the same. Under the Court's suggested methodology, this redemption/addition swap would go unaccounted for, even though profits under management would be reduced. Thus, Mr. Chiasson would be held to forfeit a number greater than the profits he received.

Regardless, the government has failed even to follow the Court's proposed methodology substituting one that is more general and does not even try to account for any documented withdrawals. Instead, the government relies on the change in assets under management per quarter as a proxy for the amount of remaining profit. However, simply taking a percentage of the difference between assets under management by quarter does not provide an accurate number of the profits under management. It ignores that redemptions and additions of capital (including profits from unquestioned trades) may offset each other, making it appear as if there was no reduction when, in fact, investors may have redeemed millions. Under the government's analysis the profits under management could be massively inflated.

Despite the lack of specificity in its approach, the government supports it position by seeking to lay the blame at Mr. Chiasson's feet. It states that "[n]either Level Global nor Chiasson has provided specific information as to withdrawals and/or deposits by different investors." Government's June 13 Letter at 2 n.2. However, this turns the burden of proving the facts underlying forfeiture on its head: the government, not Mr. Chiasson, is responsible for proving the facts underlying forfeiture.[3] In the absence of a proven, and reasonable, measurement of profits under management, the government has failed to carry its burden, and the Court should not accept its forfeiture number.

Without understanding the specifics of the withdrawals from a deeper analysis than has been undertaken, the government's proposed number is, at best, speculative. To calculate an accurate number of profits under management for each quarter from 2008 through 2010, the government should have analyzed each redemption to understand, at least, the following: (1) when the investment was made, (2) when the redemption took place, (3) how much was redeemed, and (4) in which type of fund the money was invested.[4] While the Court can make assumptions in determining forfeiture where the number is unknowable, here the government could have calculated the number and has not done so. Thus, simply relying on the government's unfounded assumptions would be unfair to Mr. Chiasson and run afoul of laws governing forfeiture.

---

[3] If the government lacked information sufficient to engage in a sophisticated analysis of the profits under management, it was incumbent on it to seek that information from Level Global, not to default to a simple mathematical equation that does not account for any variables in investors' styles or methods.

[4] For example, as described above, an investor in the technology-only fund would have a higher percentage of the profits from Dell and NVIDIA than an investor in a more diversified fund.

The Honorable Richard J. Sullivan
June 13, 2013
Page 4

*   *   *

Accordingly, in the absence of the government retaining an expert, whose report Mr. Chiasson would have an opportunity to rebut, this Court should not rely on the government's proposed forfeiture number and instead use the one Mr. Chiasson proposed at sentencing. The most accurate proposed forfeiture number stemming from management fees, one that does not overstate the profits under management, is $201,719. Thus, Mr. Chiasson respectfully renews his request that the Court use a total forfeiture number of $1,382,217.

We are available at the Court's convenience.

Respectfully,

*/s/ Gregory Morvillo*

Gregory Morvillo

cc:    Antonia M. Apps
       Richard C. Tarlowe
       John T. Zach