UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/23/15
```

UNITED STATES OF AMERICA

-v-

TODD NEWMAN, *et al.*,

Defendant.

No. 12-cr-121 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of the attached letter from third-party The New York Times Company, dated January 22, 2015, seeking the unsealing of a search warrant, the search warrant application and supporting affidavits, and other related materials. IT IS HEREBY ORDERED THAT the parties shall file any responses by February 2, 2015.

SO ORDERED.

Dated:  January 23, 2015
        New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE



David McCraw
Vice President and
Assistant General Counsel

620 Eighth Avenue
New York, NY 10018
tel 212.556-4031
fax 212.556-4634
mccraw@nytimes.com

January 22, 2015

**VIA ELECTRONIC DELIVERY**

Hon. Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   U.S. v. Newman, *et al.* (12-cr-121) – Request to Unseal Search Warrant Materials

Dear Judge Sullivan:

I write on behalf of The New York Times Company ("The Times") to seek the unsealing of a search warrant, the search warrant application and supporting affidavits, returns on executed warrant, the court order pertaining to the application, and any related materials (collectively, the "Warrant Material") in the above-referenced action. We make this request pursuant to the public right of access found in federal common law and the First Amendment. If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing.

**A. FACTUAL BACKGROUND**

Because the Court is familiar with the procedural history of the criminal prosecutions in this matter, we will not repeat it here. Our application focuses on documents from the investigation leading up to the prosecution. Specifically, on or about November 22, 2010, agents from the Federal Bureau of Investigation ("FBI") raided the offices of three hedge funds: Level Global Investors ("Level Global"), Diamondback Capital Management ("Diamondback"), and Loch Capital Management ("Loch"). *See* Peter Lattman and Azam Ahmed, "F.B.I. Agents Raid 3 Hedge Fund Offices," N.Y. Times, Nov. 22, 2010. All three raids were pursuant to a search warrants, one issued in this judicial district (Level Global") and the other two in Massachusetts (Loch) and Connecticut (Diamondback). This application pertains to the Level Global warrant.

In light of the conviction of all six defendants and the recent decision by the Second Circuit overturning two of the convictions, the case continues to be the source of understandable, legitimate, and extensive public interest. That interest is driven not merely by the specific facts of this case but by public concern about insider trading on Wall Street and by the public debate over the Government's more aggressive pursuit of financial fraud cases. *See* Peter J. Henning, "Behind the Crackdown on Insider Trading," N.Y. Times, March 1, 2012. The Government's investigations have had practical consequences as well for those in the industry and investors. Months after the raid on Level Global, for example, the hedge fund closed its doors. More than four years have passed since the FBI executed raids on Level Global, Diamondback, and Loch.

While one appeal remains pending and three defendants still await sentencing, the criminal investigation connected to the three raids has long since concluded. We have requested the release of the Warrant Material directly from the U.S. Attorney's Office. The Office was responsive and engaged in discussion with The Times but ultimately concluded that the question of releasing materials from all three warrants was better left to the courts.

## B. ARGUMENT

Both as a matter of federal common law and under the First Amendment, the public has a qualified right of access to judicial documents, including search warrant materials.

### A. *There is a Common Law Right of Access to Search Warrant Materials*

The Second Circuit Court of Appeals has long held that a common law right of access attaches to search warrant materials in the files of the courts, just as is to does to other judicial records. *See In re Application of Newsday, Inc.* 895 F.2d 74, 79 (2d Cir. 1990) (granting a right of access to search warrant materials under federal common law at the conclusion of an investigation and plea bargain); *U.S. v. All Funds on Deposit at Wells Fargo Bank in San Francisco California, in Account No. 7986104185*, 643 F.Supp.2d 577, 582-83 (S.D.N.Y. 2009) (finding common law right of access applies to search warrant materials). As a result, search warrant materials are presumptively public, and the burden falls on the parties seeking to seal them to overcome the presumption of access. *Newsday*, 895 F.2d at 77-79; *see also United States v. Bus. Of the Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011) ("[A]s the government concedes, the common law right of access applies [to warrant materials]").

The common law right of access to search warrants and their related materials is reflected in Rule 41(i) of the Federal Rules of Criminal Procedure, which requires that all papers prepared in connection with a search warrant to be filed with the clerk of the district in the district in which the subject property was seized. Fed. R. Crim. P. 41(i). These records typically are then available for public inspection because of their undeniable importance to understanding the justification for judicial action. *See Wells Fargo Bank*, 643 F.Supp.2d at 581 ("Search warrant applications clearly form the basis for judicial decision making and generally are unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery."). In fact, sealing warrants in the first instance is considered "an extraordinary action," one which "should be done only if the government shows a

real possibility of harm." *In re Offices & Storage Areas Utilized by Stephen P. Amato, D.C., P.C.*, No. 05-MJ-05-B, 2005 U.S. Dist. LEXIS 6870, at *17-18 (D. Me. Apr. 14, 2005) (quoting 3A Wright, King & Klein, Federal Practice & Procedure, Criminal § 672 (3d ed. 2004)); *see also In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 589 (D. Md. 2004) (same).

### a. The Weight of the Presumption of Access to Search Warrant Material is Especially Strong.

Since the presumption of public access attaches to the search warrant materials at issue here, the court must determine the weight of that presumption. *See Lugosch v. Pyramid Co.* 435 F.3d 110, 119 (2d Cir. 2006). "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (citing *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1049 (2d Cir. N.Y. 1995)). Documents used to adjudicate litigants' substantive legal rights – conduct at the heart of Article III – are given a strong presumption of access. *Amodeo II*, 71 F.3d at 1049. Moving down the continuum towards documents related to "matters that come within a court's purview solely to insure their irrelevance," the weight of the presumption declines. *Id.*

In *In Re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208 (DRH), 2008 U.S. Dist. LEXIS 107711 (N.D.N.Y. July 14, 2008), a district court recognized that the presumption of access to judicial records is at its apex for search warrant materials because those documents "adjudicate[] the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause." *Id.* at *7. The court went on to reason that because "[t]he judicial determination whether to permit the government to enter and search private property" is an exercise of power "at the heart of the performance of judicial functions," the common law presumption of access to search warrant materials also carries "the maximum possible weight." *Id. See also Wells Fargo Bank*, 643 F.Supp.2d at 583 ("There can be no doubt that a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights, or that information upon which the court relies in making that determination directly affects the adjudication. The affidavits at issue here contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants. The common law presumption of access to the affidavits is therefore entitled to great weight.").

All of those considerations apply with equal force here, where the court was asked to determine whether the law enforcement interests presented were sufficient to set aside the right to be free from such intrusion on private property rights. *See generally United States v. Leon*, 468 U.S. 897, 913-14 (1984) (court's exercise of duties under Fourth Amendment warrant requirement mandates a "detached and neutral" judge who will "not serve merely as a rubber stamp for the police").

### b. *Countervailing Interests Cannot Overcome the Presumption of Access for the Warrant Material Sought in This Case*

After determining the weight of the presumption of access, a court must then "balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. Only if "countervailing factors outweigh the presumption of access should sealing continue. *Lugosch*, 435 F.3d at 124. Such countervailing factors include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Amodeo II*, 71 F.3d at 1050.

Here, the presumption of access to the Warrant Material cannot be overcome. The conclusion of the investigation and trials obviates any law enforcement needs or fair-trial concerns that might have been present earlier.

Second, it appears unlikely that privacy interests that might support sealing in some other circumstances, such as disclosures pertaining to "innocent third parties," *see Newsday*, 895 F.2d at 80, are not implicated here. For purposes of determining privacy rights at common law, courts have recognized a profound distinction between the revelation of "intimate details" (such as medical records, and physical details of one's sex life), on the one hand, and other types of information relating to individuals. *See Haynes v. Knopf, Inc.*, 8 F.3d 1222, 1229-30 (7th Cir. 1993). As Judge Posner indicated in *Haynes*, the right of privacy may not be invoked as a shield against the revelation of misconduct, particularly where the misconduct is newsworthy. *Id.* at 1230, 1232. The Second Circuit has held that while a court should not grant public access to judicial records simply to cater to a "morbid craving for that which is sensational or impure" or "to gratify private spite or promote public scandal . . .", it equally should not prevent disclosure without considering the "degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051.

Here, the search warrant at issue related to a business, not a private home, and the conduct being investigated related to insider trading – hardly the sort of issue that would raise the kind of personal privacy issues with which courts are concerned. Further, all of the allegedly illegal activity that underpinned the search warrants has been the subject of full public trials and has long since become public knowledge. As one court has noted, "a party that opposes access to sealed material can have no legitimate privacy interest in matters that are no longer private." *In re Search Warrant*, No. M-3-94-80, 1994 U.S. Dist. LEXIS 18360, at *29 (D. Ohio June 7, 1994); *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. N.Y. 1987) (noting that the extent of public knowledge of sealed material factors into a court's decision to grant access). And, to the extent there is some private information contained in the Warrant Material, the proper course of action is redaction, not wholesale withholding.

### B. *There is a First Amendment Right of Access to Search Warrants*

In addition to common law right of access, a First Amendment right of access also applies to the Warrant Material.

It is beyond dispute that a First Amendment right of access attaches to a large array of judicial documents and gives the public a constitutional right to inspect those records, absent a showing

of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92-93 (2d Cir. 2004) (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

The Supreme Court has developed a two-part test – experience and logic – for determining whether the First Amendment right attaches to particular documents. *See Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise II")*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the press and the public. *Press-Enterprise II*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.

The Second Circuit has not decided whether a First Amendment right of access applies to search warrant materials. *See Newsday*, 895 F.2d at 78. However, because search warrant materials have historically been open under the Federal Rules of Criminal Procedure upon their filing with the clerk and because disclosure of such materials helps the public monitor whether the extraordinary government power to infringe on a person's privacy is being exercised appropriately, the argument for attachment of the First Amendment right is particularly strong, especially in cases where an investigation has concluded. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 596, 573 (8th Cir. 1988) (finding a First Amendment right of access to documents filed in support of search warrant applications, even prior to return of an indictment and while investigation is ongoing, because of the importance of such papers to the public's understanding and appreciation of criminal justice processes); *United States v. Loughner*, 769 F.Supp.2d 1188, 1193 (D. Ariz. 2011) (finding a First Amendment right of access to search warrant documents at the "post-investigation, post-indictment" stage of a criminal proceeding); *In the Matter of the Application of The New York Times Company For Access to Certain Sealed Court Records*, 585 F.Supp.2d 83 (D.D.C. 2008) (holding that access to sealed search warrants, warrant applications and supporting materials should be granted under the First Amendment); *but see Wells Fargo Bank*, 643 F.Supp.2d at 581-82 (finding the First Amendment right does not attach to warrant materials pre-proceeding).

Where the First Amendment right of access applies to a set of documents, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve the interest." *Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise I")*, 464 U.S. 501, 510 (1984). *See also Lugosch*, 435 F.3d at 124 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). The burden of making that showing rests with the party seeking or protecting a sealing order, and it is a heavier burden than the one imposed at common law. *Lugosch*, 435 F.3d at 126. Before sealing records, the court must make "specific, on-the-record findings" that the sealing meets the *Press-Enterprise* standard. *Lugosch*, 435 F.3d at 124. As set forth above, there are no countervailing interests sufficient to overcome the common law right, let alone the stronger First Amendment right.

For all of the foregoing reasons, we respectfully request that the Warrant Material be made public, or, alternatively, that the parties be required to demonstrate why the records should

5

remain under seal. If the parties make such an application, we ask for the right to file a response to such application and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

David E. McCraw

cc: Stephen Robert Fishbein
Alfred Ulmer Pavlis
Jonathan A. Nathanson
Lindi Ladon Beaudreault
Michelle Lynn Levin
Reid Weingarten
Bruce C. Bishop
E. Scott Morvillo
Gregory Robert Morvillo
Robert Craig Morvillo
Steven Robert Peikin
Andrew Hunter Reynard
Beth Deborah Newton
Daniel Zachary Goldman
Guy Petrillo
Karen Patton Seymour
Katherine Cannella Reilly
Roland Gustaf Riopelle
Dawn Marcella Cardi
Diane Ferrone
James T. Reilly
Barry H. Berke
Eric Anders Tirschwell
Megan Ryan
Robin Marie Wilcox
Steven Shane Sparling
Antonia Marie Apps
Harry A. Chernoff
John Thomas Zach
Richard Craig Tarlow